IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

VICKI STILLMUNKES,

    Plaintiff,

vs.

GIVAUDAN FLAVORS CORPORATION, a Delaware corporation; DOE DEFENDANTS 1-20; FIRMENICH INCORPORATED; and SYMRISE, INC., *formerly doing business as* Dragoco, Inc.,

    Defendants.

-------

SYMRISE, INC.,

    Third-Party Plaintiff,

vs.

POLAROME MANUFACTURING CO., *aka* Polarome International, Inc.,

    Third-Party Defendant.

No. C04-0085

ORDER REGARDING MEMORANDUM DATED MAY 25, 1989

TABLE OF CONTENTS

*I.*   *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *ISSUE PRESENTED.* . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*   *RELEVANT FACTS AND PROCEEDINGS.* . . . . . . . . . . . . . . . . 2
    *A.*   *The Lawsuit.* . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.*   *The Supplemental Production.* . . . . . . . . . . . . . . . . . 3
    *C.*   *The Memorandum* . . . . . . . . . . . . . . . . . . . . . . . . 4

*IV.*   *DISCUSSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.*   *Is Stillmunkes' Opposition Timely?* . . . . . . . . . . . . . . 6
    *B.*   *Is the Memorandum Protected By the Attorney-Client Privilege?* . 7
    *C.*   *Should the Inadvertently Produced Material Be Returned?* . . . 11

*V.*   *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

This matter comes before the Court on the Motion to Compel Return of Inadvertently Produced Privileged Document and Motion for Protective Order (docket number 463) filed by Defendant Givaudan Flavors Corporation ("Givaudan") on March 10, 2009, and the Motion for the Removal of the Privileged Status on Givaudan Document Bates Numbered TM-GM000186 (docket number 475) filed by Plaintiff Vicki Stillmunkes on March 27, 2009. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. ISSUE PRESENTED

Givaudan claims that on February 19, 2009, it inadvertently produced a privileged document. Givaudan asks that the Court compel its return by Stillmunkes' counsel, and that the Court enter a protective order prohibiting Stillmunkes' counsel from "using" the document or "any of the information contained in the document." Stillmunkes resists and asks that the Court enter an order "revoking the claim of attorney client privilege" regarding the disputed document.

## III. RELEVANT FACTS AND PROCEEDINGS

### A. The Lawsuit

Starting in 1997, Plaintiff Vicki Stillmunkes was employed by General Mills Corporation at a microwave popcorn plant in Iowa City. Defendant Givaudan Flavors Corporation provided a butter flavoring for use by General Mills on its microwave popcorn. Stillmunkes claims that she contracted bronchilitis obliterans as a consequence of her exposure to butter flavoring products containing diacetyl. In a Complaint (docket number 1) filed on July 6, 2004, Stillmunkes sought compensatory damages against Givaudan and others, claiming "product defect" and "failure to warn." A First Amended Complaint (docket number 3) was filed on July 19, 2004, adding defendants but alleging the same basic facts and theories of recovery. Trial was scheduled before Judge

Edward J. McManus on April 20, 2009, but was recently continued pending further order of the Court.[1]

### B. *The Supplemental Production*

On February 19, 2009, Givaudan supplemented its production of documents by providing Stillmunkes with a CD containing various requested information.[2] Among the documents included on the CD was a memorandum regarding an inquiry received by Givaudan concerning skin dermatitis suffered by an employee at General Mills.[3] On February 23, Givaudan contacted Stillmunkes and asserted that "a document subject to the attorney-client privilege was inadvertently produced" as part of the supplemental production of documents.[4] Givaudan assured Stillmunkes that it would promptly provide a replacement CD and requested that Stillmunkes "immediately return the disc" containing the disputed document. The letter also notes that "[t]his privileged document appears on the previously produced privilege log." A replacement CD was sent by Federal Express on February 24.[5]

---

[1] On March 6, 2009, Judge Mark W. Bennett filed an Order directing the parties to show cause why the case should not be consolidated for trial with *Christopher Blood, et al. v. Givaudan Flavors Corporation, et al.*, No. C07-0142-MWB. *See* Order to Show Cause Why Cases Should Not Be Consolidated for Trial (docket number 461). That issue is still pending.

[2] *See* Letter from Victoria J. Miller to Steven B. Crick, dated February 19, 2009, attached to Givaudan's Memorandum of Law as Exhibit A (docket number 463-4 at 1-2).

[3] The disputed document, Bates stamped TM-GM1000186, was filed by Stillmunkes under seal as Exhibit 1 (docket number 475-7).

[4] *See* Letter from Victoria J. Miller to Steven B. Crick, dated February 23, 2009, attached to Givaudan's Memorandum of Law as Exhibit B (docket number 463-5 at 2).

[5] *See* Letter from Jonathan W. Light to Steven B. Crick, dated February 24, 2009, attached to Givaudan's Memorandum of Law as Exhibit C (docket number 463-6).

3

Stillmunkes responded to Givaudan's request by asking that it "[p]lease identify the document."[6] On February 24, Givaudan advised Stillmunkes that it "expect[s] your prompt return of the original disc and all printed copies of the document, TM-GM1000168 [sic] from that disc."[7] Stillmunkes subsequently advised Givaudan that she would not voluntarily return the document which Givaudan claims as privileged.

## C. The Memorandum

The disputed memorandum, dated May 25, 1989, followed a phone inquiry on the previous day from Jim Collins, who was employed in the corporate safety and health department at General Mills. On May 24, 1989, Mr. Collins called Givaudan[8] requesting information pertaining to a possible hazard associated with exposure to Givaudan's butter flavoring. A "request for information" form, apparently filled out by someone at Givaudan on that date, states:

> A gentleman working w/ flavor has developed Dermatitis. He
> read the M.S.D.S. & it scared him. Mr. Collins wants to talk
> to someone re the hazardous products in this flavor plus has
> some other questions ASAP.

See Request for Information, attached to Stillmunkes' Brief as Exhibit 2 (docket number 475-3). During the course of this action, the "request for information" form was produced by Givaudan to Stillmunkes.[9]

What happened next is described in the memorandum at issue. Jeanne L. Hils called John Crenshaw regarding the inquiry. Under her signature line on the May 25, 1989 memo, Ms. Hils is described as a "Regulatory Assistant." In the heading, the memo

---

[6] See E-mail from Steven E. Crick to Victoria J. Miller, dated February 23, 2009, attached to Givaudan's Memorandum of Law as Exhibit D (docket number 463-7 at 1).

[7] Id. (docket number 463-7 at 3). In fact, the document is numbered 186, not 168.

[8] It is the Court's understanding that the call was made to Givaudan's predecessor-in-interest, but for convenience the Court will refer to Givaudan.

[9] See Stillmunkes' Brief in Opposition at 2 (docket number 475-2 at 2).

4

indicates that it's from "Jeanne Hils, Regulatory - Fries & Fries." The heading of the memo indicates that it's to "John Crenshaw, Esq. - Mallinckrodt, Legal Dept." In its reply brief, Givaudan asserts that "[a]t the time of this memorandum in 1989, Fries & Fries was operating as a division of Mallinckrodt, whose flavoring business was ultimately acquired by Givaudan in 1997."[10]

After discussing the matter with Mr. Crenshaw, Ms. Hils called Mr. Collins back and responded to his questions. According to the memo, Mr. Collins "seemed satisfied" with Ms. Hils' response, but had some additional "technical questions." Apparently at Ms. Hils' request, Lovell Fitzpatrick "look[ed] at the formula" and called Mr. Collins back. According to the memo, "Mr. Collins seemed quite satisfied that the flavor product in all likelihood did not cause or contribute to the employee's dermatitis." Ms. Hils concluded her memo as follows:

> I just thought you may wish an update and memo for your file
> with regard to this incident. Thank you very much for your
> help in this matter. It gives us a general idea as to how we
> should and could handle such inquiries.

*See* Memo dated May 25, 1989, attached to Stillmunkes' Brief as sealed Exhibit 1 (docket number 475-7).

Jim Collins, who is still employed by General Mills as an industrial hygienist, was deposed in this action on August 14, 2007.[11] In his deposition, Mr. Collins testified that he did not remember how long workers at the Iowa City facility had been complaining of contact dermatitis and specifically did not remember complaints going back as early as

---

[10] *See* Givaudan's Reply Brief at 4, n.4 (docket number 480 at 4).

[11] According to Stillmunkes, Mr. Collins is also "in the midst of a deposition in the companion case Blood." *See* Stillmunkes' Brief in Opposition at 2 (docket number 475-2 at 2).

5

1993.[12] Mr. Collins was apparently not asked about the "request for information" form, but Stillmunkes believes that the 5/25/89 memorandum "will likely refresh his recollection of the events."[13]

## IV. DISCUSSION

On March 10, 2009, Givaudan filed the instant motion to compel, asking that Stillmunkes be ordered "to return a privileged document that was inadvertently produced on February 19, 2009." Givaudan also asks that the Court enter a protective order "prohibiting plaintiff's counsel from using the inadvertently produced document, any copies of it, and any of the information contained in the document for any purpose in this or any other flavoring litigation." Stillmunkes resists Givaudan's motions. In addition, Stillmunkes argues that "Givaudan has incorrectly labeled this as a document protected by attorney/client privilege" and requests that the Court enter an order "finding that a document marked privileged by Defendant Givaudan is not privileged."

### A. Is Stillmunkes' Opposition Timely?

In its reply brief, Givaudan asserts that Stillmunkes' opposition was not timely filed and should be stricken. Givaudan's instant motion to compel was filed on March 10, 2009. Givaudan argues that Stillmunkes' response was due on March 24, citing Local Rule 7.e.

> Each party resisting a motion must, within fourteen days after the motion is served, file a brief containing a statement of the grounds for resisting the motion and citations to the authorities upon which the resisting party relies. . . .

Local Rule 7.e.

However, Givaudan's argument disregards the effect of Local Rule 6.

---

[12] *See* Deposition of James Collins, attached to Stillmunkes' Brief in Opposition as Plaintiff's Exhibit 3 (docket number 475-4 at 2).

[13] *See* Stillmunkes' Brief in Opposition at 2 (docket number 475-2 at 2).

> The three-day mailing rule in Federal Rule of Civil Procedure 6(d) also applies to documents served electronically pursuant to Federal Rule of Civil Procedure 5(b)(2)(E). Thus, whenever a party is required to do something within a prescribed period after service, and service is completed electronically under Local Rule 5.2.k.1, a period of three days is added to the prescribed period, unless contrary to the specific requirements of an order of the court.

Local Rule 6.

In combination, Local Rules 6 and 7.e provide 17 days in which to file a resistance to a motion to compel or a motion for protective order. Accordingly, Stillmunkes' brief in opposition to the motion to compel, filed on March 27, 2009, was timely. Givaudan's argument in this regard is without merit.[14]

### B. Is the Memorandum Protected By the Attorney-Client Privilege?

Givaudan argues that the memorandum sent by Ms. Hils to Mr. Crenshaw, dated May 25, 1989, is protected from discovery by the attorney-client privilege. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Company v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* In her motion, Stillmunkes seeks a judicial declaration that the 5/25/1989 memo is not protected by attorney-client privilege.

In a diversity case, such as the instant action, the determination of whether the attorney-client privilege applies is governed by state law. *Union County, Iowa v. Piper Jaffray & Co., Inc.*, 425 F.3d 643, 646 (8th Cir. 2008). The attorney-client privilege in

---

[14] The Court notes, however, that by combining its resistance to Givaudan's motion with its "motion for the removal of the privileged status," Stillmunkes failed to comply with Local Rule 7.e, which states: "A resistance to a motion may not include a separate motion or a cross-motion by the responding party. Any separate motion or cross-motion must be filed separately as a motion."

7

Iowa "is of ancient origin" and is codified in Iowa Code Section 622.10. *Bailey v. Chicago, B. & Q.R. Co.*, 179 N.W.2d 560, 563 (Iowa 1970). The attorney-client privilege "is premised on a recognition of the inherent right of every person to consult with legal counsel and secure the benefit of his advice free from any fear of disclosure." *Id.*

While the parties have not cited any Iowa case which discusses the issue directly, it would appear that Iowa applies the attorney-client privilege to circumstances where the client is a corporation. In *Tausz v. Clarion-Goldfield Comm. School Dist.*, 569 N.W.2d 125 (Iowa 1997), the Court recognized an attorney-client privilege with respect to communications between public agencies or public officials and their lawyers. *Id.* at 128. In reaching that conclusion, the Court cited with approval the definition of "client" within the lawyer-client privilege as

> a person, including a public officer, corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.

*Id.* at 127-128 (citing Unif. R. Evid. 502(a)(1) (amended 1986), 13A U.L.A. 518-20 (1994)). *See also United Fire & Cas. Co. v. Swiss Reinsurance America Corp.*, 690 N.W.2d 700 (table), 2004 WL 1898252 (Iowa App.) (concluding that the corporate plaintiff did not waive its attorney-client privilege in regard to its general counsel).

When the "client" is a corporation, however, application of the attorney-client privilege is sometimes more complicated. In *Upjohn*, the United States Supreme Court confirmed that the federal common-law attorney-client privilege applies even when the client is a corporation, rather than an individual. 449 U.S. at 389-390. The Court acknowledged, however, that "complications in the application of the privilege arise when the client is a corporation." *Id.* at 389. *See also Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348 (1985) (recognizing that the administration of the attorney-client privilege in the case of corporations "presents special problems").

"An attorney-client privilege arises only if an attorney-client relationship has been created." *State v. Parker*, 747 N.W.2d 196, 203 (Iowa 2008). "Thus, the first task is to determine if an attorney-client relationship existed at the time the statements were made." *Id.* Here, Ms. Hils, a "regulatory assistant" employed by Givaudan, called a company attorney for advice about how to respond to an inquiry regarding a possible hazard associated with exposure to Givaudan's butter flavoring. After receiving that advice and responding to the inquiry, Ms. Hils summarized the events in a memorandum directed to the attorney. The memorandum thanks counsel for "your help in this matter," and suggests that the experience "gives us a general idea as to how we should and could handle such inquiries."

The Iowa Rules of Professional Conduct impose a duty on a lawyer not to reveal information relating to the representation of a client, except under limited circumstances. *See* Iowa R. of Prof'l Conduct 32:1.6(a). The official comments to the Rules suggest that the general provision of confidentiality applies to corporate employees and in-house counsel.

> When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by rule 32:1.6.

Iowa R. of Prof'l Conduct 32:1.13, Cmt. [2]. The "constituents" of an organizational client include its "[o]fficers, directors, employees, and shareholders." *Id.*, Cmt. [1].[15]

---

[15] In its reply brief, Givaudan argues that "[t]he privilege protects 'anyone associated with the organization who approaches the lawyer for legal advice respecting the entity, *that is, when the communication is initiated by an organizational constituent rather than the lawyer*,'" quoting *Bailey v. Chicago, B. & Q.R. Co.*, 179 N.W.2d 560, 563-64 (Iowa 1970) (emphasis added by Givaudan). *See* Givaudan's Reply Brief at 3 (docket number 480 at 3). The Court has scoured the opinion in *Bailey*, however, and is unable to find the excerpt quoted by counsel.

The Iowa Supreme Court has adopted a three-part test to determine the existence of an attorney-client relationship.

> The [attorney-client] relationship exists when: "(1) a person sought advice or assistance from an attorney, (2) the advice or assistance sought pertained to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance."

*State v. Parker*, 747 N.W.2d at 203 (quoting *Comm. on Prof'l Ethics & Conduct v. Wunschel*, 461 N.W.2d 840, 845 (Iowa 1990)). The burden of proof is on the party seeking to establish the privilege. *Id.* at 204.

The Court concludes that Ms. Hils, a Givaudan employee, sought advice or assistance from Givaudan's in-house counsel. The assistance was sought by Ms. Hils in her employment capacity and the response was made by company counsel in his professional capacity. Mr. Crenshaw apparently provided advice or assistance to Ms. Hils, and she relied on that advice or assistance in responding to Mr. Collins. The Court concludes that these circumstances meet the three-part test described in *Parker* and the 5/25/89 memorandum was a communication sent in conjunction an attorney-client relationship.

In an effort to avoid the attorney-client privilege, Stillmunkes makes a half-hearted attempt to argue the crime-fraud exception, citing *State v. Kirkpatrick*, 220 Iowa 974, 263 N.W. 52 (Iowa 1935). There, the defendant was convicted of "unlawfully and feloniously uttering of four $1,000 bonds." *Id.* at 53. An attorney who spoke with the defendant regarding the bonds testified as a witness for the State. In concluding that the testimony was not protected by the attorney-client privilege, the Court found that by putting the defendant in touch with a bond broker, the witness was not "employed as an attorney in the matter." *Id.* at 54. The Court also found that there was "another reason" why the testimony was not objectionable, noting that "communications by one contemplating crime

or the perpetration of fraud to an attorney for advice as to how to succeed are not privileged." *Id.* at 55.

In *United States v. Zolin*, 491 U.S. 554 (1989), the Court noted that the purpose of the crime-fraud exception is to assure that communications between lawyer and client "made for the purpose of getting advice for the commission of a fraud" are not protected by the "seal of secrecy," which is the essence of the attorney-client privilege. *Id.* at 563. The party claiming that the crime-fraud exception permits discovery of communications which would otherwise be covered by the attorney-client privilege "must make a threshold factual showing that the exception applies." *Kilpatrick v. King*, 499 F.3d 759, 766 (8th Cir. 2007). That is, the party seeking the discovery must present facts warranting a reasonable belief that the legal advice was obtained to further a crime or fraud. *Id.* (citing *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001)). Here, there is no evidence that the May 24, 1989 communication between Ms. Hils and Mr. Crenshaw, or the memorandum prepared by Ms. Hils on the following day, were intended to further a fraud. Accordingly, the Court finds that the crime-fraud exception is inapplicable.

### C. Should the Inadvertently Produced Material Be Returned?

In its motion, Givaudan asserts that the 5/25/89 memorandum was inadvertently produced, and asks that the Court order its prompt return. The procedure for addressing issues relating to inadvertently produced material is found in FEDERAL RULE OF CIVIL PROCEDURE 26(b)(5)(B).

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of

11

the claim. The producing party must preserve the information
until the claim is resolved.

FED. R. CIV. P. 26(b)(5)(B). The Rule "provides a procedure for presenting and addressing these issues," but does not address the issue of whether the privilege was waived by the production of the material. *See Id.*, Comments to 2006 Amendment.

On September 19, 2008, the FEDERAL RULES OF EVIDENCE were amended to address the issue of waiver regarding inadvertently produced material. The Rule states:

> When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> (1)   the disclosure is inadvertent;
>
> (2)   the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3)   the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

FED. R. EVID. 502(b).

In her resistance, Stillmunkes does not contest Givaudan's claim that the production was inadvertent. It is apparently undisputed that the 5/25/89 memo was previously identified on Givaudan's privilege log. It is also undisputed that Givaudan promptly took reasonable steps in an attempt to "rectify the error." After Givaudan's attempt to secure the voluntary return of the document was unsuccessful, it filed a motion for protective order pursuant to FEDERAL RULE OF CIVIL PROCEDURE 26(b)(5)(B). The record is silent regarding what steps Givaudan took to prevent disclosure.

In its brief in opposition to the motion to compel, Stillmunkes does not address the motion to compel or motion for protective order directly. Stillmunkes does not argue waiver. Instead, Stillmunkes relies on her argument that the memorandum is not protected

by the attorney-client privilege. For the reasons set forth above, the Court has rejected that argument. Accordingly, the Court finds that Givaudan is entitled to the relief requested.

## V. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Motion to Compel Return of Inadvertently Produced Privileged Document and Motion for Protective Order (docket number 463) filed by Defendant Givaudan Flavors Corporation on March 10, 2009, is hereby **GRANTED**. Plaintiff Vicki Stillmunkes shall promptly return the Memorandum dated May 25, 1989 (Bates Number TM-GM000186) and shall be prohibited from using the inadvertently produced document in this litigation.[16]

2. The Motion for the Removal of the Privileged Status (docket number 475) filed by Plaintiff Vicki Stillmunkes on March 27, 2009 is hereby **DENIED**.

DATED this 7th day of April, 2009.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[16] Givaudan requests that the Court also prohibit its use in "any other flavoring litigation," but the Court concludes that it has no authority to enter an order in "other flavoring litigation."