IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CHRISTOPHER BLOOD and WENDY BLOOD; JEFF BROCKMEYER and ANN BROCKMEYER; DEAN DAUBER and TANYA DAUBER; and SUE KOHL, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GIVAUDAN FLAVORS CORPORATION, a Delaware Corp., f/k/a Givaudan-Roure Corp. and also as Givaudan-Roure Flavors Corp., and also f/k/a Tastemaker Corp. and also as Fries & Fries, Inc. and also as Mallinckrodt Food & Flavors, Inc. and also as Mallinckrodt Food & Fragrances, Inc. and as a partner in the partnership Tastemaker; FIRMENICH INCORPORATED, a Delaware Corporation; SYMRISE INC., a New Jersey Corporation; and JOHN DOE DEFENDANTS 1-20, <br><br> Defendants. | No. C07-0142-MWB <br><br> **MEMORANDUM OPINION AND ORDER REGARDING CONSOLIDATION OF CASES FOR TRIAL** |
| VICKI STILLMUNKES, <br><br> Plaintiff, | No. C04-0085-EJM |

vs.

GIVAUDAN FLAVORS
CORPORATION, a Delaware
Corporation; DOE DEFENDANTS 1-20;
FIRMENICH INCORPORATED; and
SYMRISE, INC., formerly doing
business as Dragoco, Inc.,

       Defendants.

and

SYMRISE, INC.,

       Third-Party Plaintiff,

vs.

POLAROME MANUFACTURING CO.,
a/k/a Polarome International, Inc.,

       Third-Party Defendant.

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *1.    Factual background concerning Stillmunkes* . . . . . . . . . . . 5
        *2.    Factual background concerning the Blood plaintiffs* . . . . . . . 5

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A. Legal Standards For Consolidation* . . . . . . . . . . . . . . . . . . . . . . . . 6
    *B. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        *1.    Common questions of law or fact* . . . . . . . . . . . . . . . . . . . 9
        *2.    Other factors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            *a.    Risk of prejudice to defendants* . . . . . . . . . . . . . . 10

    b. *The burden on the parties, witnesses, and resources* . 15
    c. *Length of trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION AND BACKGROUND

On March 6, 2009, after conclusion of a twelve day trial in a popcorn lung case involving substantially similar claims, *Kuiper v. Givaudan Flavors Corp.*, No. 06-4009-MWB (N.D. Iowa), I *sua sponte* entered an order to show cause why these two cases should not be consolidated for trial pursuant to Federal Rule of Civil Procedure 42. I directed the parties to file either a notice of consent to consolidation or a brief showing cause why these two cases should not be consolidated pursuant to Rule 42. Plaintiffs in both cases have filed a notice of consent to consolidation. Defendants Givaudan, Firmenich, Symrise, as well as third-party defendant Polarome, have each filed a brief in which they argue against consolidation. Plaintiffs have filed a resistance to defendants' position. Defendants, in turn, have filed reply briefs in support of their opposition to consolidation.

### A. Procedural Background

On July 19, 2004, plaintiff Vicki Stillmunkes filed an Amended Complaint against defendants International Flavors & Fragrances, Inc. ("IFF"), Bush Boake Allen, Inc. ("BBA"), Givaudan Flavors Corp. ("Givaudan"), Firmenich Incorporated ("Firmenich"),

3

Symrise, Inc. ("Symrise"), Dragoco, Inc. ("Dragoco"), and five "John Doe" Defendants.[1] The Amended Complaint sets out claims against the six named defendants, all manufacturers, designers, or sellers of butter flavorings, for a design defect and a failure to warn regarding their butter flavorings containing diacetyl. She claims she was exposed to diacetyl during her employment at a General Mills microwave popcorn plant in Iowa City, Iowa.[2] Symrise, in turn, filed a third party complaint against Polarome International, Inc. ("Polarome"), a distributor of diacetyl, for contribution.

On December 13, 2007, plaintiffs Christopher Blood and Wendy Blood, Jeff Brockmeyer and Ann Brockmeyer, Dean Dauber and Tanya Dauber, and Sue Kohl (Christopher, Jeff, Dean and Sue will collectively be referred to as "the Blood plaintiffs" unless otherwise indicated) filed their Complaint against defendants Givaudan, Firmenich, Symrise, and twenty John Doe defendants alleging causes of action for negligence and a combined claim for loss of consortium and medical expenses. They have also asserted causes of action for fraudulent concealment against defendants Givaudan and Firmenich.[3]

---

[1] Symrise was created from a merger involving Dragoco and another entity. In this order I will refer to them collectively as Symrise.

[2] Defendants IFF and and BBA were dismissed from the case on June 21, 2005, by joint stipulation of the parties.

[3] The plaintiffs in the *Blood* case also asserted a cause of action for fraudulent concealment against defendant Symrise. Because plaintiffs did not plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b), I dismissed the fraudulent concealment claim.

## B. Factual Background

The following factual background is based on the allegations in plaintiff Stillmunkes's Amended Complaint and the Blood plaintiffs' Complaint.

### 1. Factual background concerning Stillmunkes

Vicki Stillmunkes is a resident of Cedar Rapids, Iowa. General Mills Corporation ("General Mills") manufactures microwave popcorn, which it markets and sells under the name Pop Secret. Starting in 1997, Stillmunkes was employed by General Mills at its microwave popcorn plant in Iowa City, Iowa. She worked as a filler operator, material handler, and a mixer. Defendants Givaudan, Firmenich and Symrise are alleged to have participated in the design, manufacture and sale of butter flavoring products containing diacetyl. Stillmunkes alleges she was exposed to defendants Givaudan, Firmenich and Symrise's respective butter flavoring products containing diacetyl during her period of employment at General Mills's Iowa City microwave popcorn plant. After being exposed to defendants Givaudan, Firmenich and Symrise's butter flavoring products containing diacetyl, Stillmunkes alleges she began to experience fatigue and shortness of breath. In July or August 2002, Stillmunkes sought testing and treatment for her condition. She was then diagnosed as having bronchiolitis obliterans with significantly reduced lung capacity. She alleges that butter flavoring products containing diacetyl designed, manufactured and sold by defendants Givaudan, Firmenich and Symrise are defective in their design because exposure to them causes respiratory illnesses and diseases. She also alleges defendants Givaudan, Firmenich and Symrise knew of the risks associated with exposure to butter flavoring products containing diacetyl but failed to warn her of those risks.

### 2. Factual background concerning the Blood plaintiffs

Christopher Blood and Wendy Blood live in Linn County, Iowa. Christopher was employed by General Mills at its microwave popcorn packaging facility in Iowa City,

5

Iowa, from October 1997 to April of 2005. Jeff Brockmeyer and Ann Brockmeyer also live in Linn County, Iowa. Jeff worked at General Mills's popcorn packaging plant in Iowa City from 1993 to 2005. Dean Dauber and Tanya Dauber live in Johnson County, Iowa. Dean was employed at General Mills's popcorn packaging facility in Iowa City from 1993 to July 2005. Sue Kohl lives in Johnson County, Iowa, and also worked at General Mills's popcorn packaging plant in Iowa City. Sue worked there from 1993 to 2002. Defendants Givaudan, Firmenich and Symrise are alleged to have participated in the design, manufacture, and sale of butter flavoring products containing diacetyl. The Blood plaintiffs worked as mixers, maintenance workers, and in other positions at General Mills's popcorn packaging plant and in the ordinary course of their employment were exposed to defendants Givaudan, Firmenich and Symrise's natural and artificial butter flavorings. The Blood plaintiffs have all been diagnosed with lung diseases.[4] The Blood plaintiffs allege exposure to defendants' natural and artificial butter flavoring products caused damage to their lungs and/or respiratory systems.

## II. LEGAL ANALYSIS

### A. Legal Standards For Consolidation

Federal Rule of Civil Procedure 42(a) provides that: "If actions before the court involve a common question of law or fact, the court may . . . join for hearing or trial any or all matters at issue in the actions. . ." FED. R. CIV. P. 42(a). The decision to consolidate is entrusted to the sound discretion of the court, but that discretion is not unbounded. *Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994); *United States*

---

[4] It appears from the parties' moving papers, that plaintiffs Christopher Blood and Dean Dauber claim to have upper airway obstructions while plaintiffs Jeffrey Brockmeyer and Sue Kohl claim to suffer from bronchiolitis obliterans.

6

*E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394 (8th Cir. 1990), *cert. denied*, 502 U.S. 956, (1991); *EEOC v. Von Maur, Inc.*, 237 F.R.D. 195, 197 (S.D. Iowa 2006); *Powell v. National Football League*, 764 F. Supp. 1351, 1359 (D. Minn. 1991); *Kramer v. Boeing Co.*, 134 F.R.D. 256, 258-59 (D. Minn. 1991); *Atlantic States Legal Found., Inc. v. Koch Ref. Co.*, 681 F. Supp. 609, 615 (D. Minn. 1988). A common issue of law or fact is a prerequisite to consolidation of cases. *See Seguro de Servicio de Salud v. McAuto Sys. Group*, 878 F.2d 5, 8 (1st Cir.1989) ("The threshold issue is whether the two proceedings involve a common party and common issues of fact or law."); *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1531 (5th Cir.1993) ("[A] trial court may consolidate multiple actions if the actions involve common questions of law or fact."); *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171,174 (D.N.J. 2008) ("Thus, a threshold requirement for consolidation is whether there exists a common question of law or fact."); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp.2d 1061, 1064-65 (C.D. Cal. 1999) ("The threshold issue, therefore, is whether the actions involve common facts or legal issues."); *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) ("A common question of law or fact shared by all of the cases is a prerequisite for consolidation."); *Fleishman v. Prudential-Bache Sec.*, 103 F.R.D. 623, 624 (E.D. Wis. 1984) ("There must be questions of law or fact common to the cases that are to be consolidated. . . .").

Consolidation has historically been a "matter of convenience and economy in administration," *Von Maur, Inc.*, 237 F.R.D. at 197 (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496 (1933)), and its purpose is to avoid unnecessary cost or delay. *EEOC v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir. 1998). Consequently, "[t]he Rule should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v.*

7

*Transportation Communications Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal citations and quotations omitted). Thus, consolidation is inappropriate if it leads "to inefficiency, inconvenience, or unfair prejudice to a party." *HBE Corp.*, 135 F.3d at 551. "The party seeking consolidation bears the burden of showing that it would promote judicial convenience and economy." *Powell*, 764 F. Supp. at 1359; *accord Fleishman v. Prudential-Bache Sec., Inc.*, 103 F.R.D. 623, 624-25 (E.D. Wis. 1984). In considering consolidation, the court should thoughtfully weigh:

> "[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Cantrell v. GAF*, 999 F.2d 1007, 1011 (6th Cir. 1993) (quoting *Hendrix v. Raybestos-Manhattan Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)); *accord Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990) (quoting *Hendrix*, 776 F.2d at 1495); *see also Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 405 (D. Minn. 1998) (citing *Cantrell*, 999 F.2d at 1011).

### *B. Analysis*

I again note that I recently completed a twelve day trial in a popcorn lung case involving substantially similar claims, *Kuiper v. Givaudan Flavors Corp.*, No. 06-4009-MWB (N.D. Iowa). As a result, I am in a unique position to gauge the risks of prejudice to defendants should these two cases be consolidated for trial. I also note that our district lead the nation's 94 federal district courts in the number of trials per judge in 2008 as we have for a number of years in the last decade. I am in my fifteenth year as a United States

District Court Judge and am very experienced in jury trials. Since the same counsel who represented the plaintiffs and defendant Givaudan in the *Kuiper* case represent the plaintiffs and defendant Givaudan in both the *Blood* and *Stillmunkes* cases, I am also familiar with their general approach to this unique type of product liability litigation.

It has been my practice for a number of years to give each juror a complete set of instructions prior to opening statements in every civil and criminal case I try. Also, the jurors are allowed to keep their copy of the instructions throughout the course of trial and to take whatever notes they think appropriate. Each juror is also given a comprehensive verdict form in chart format along with the jury instructions. This type of verdict form enables each juror to visualize everything that they will be called upon to decide at the conclusion of the case. Finally, the state-of-the-art technology in the courtroom also allows the parties, as they did in *Kuiper*, and in every complicated civil case I try, to use demonstrative exhibits to simplify the case and to display to the jury every exhibit used. The significance of these procedures is that the jury is fully informed of the precise claims, defenses and issues it will be called upon to decide before hearing any evidence. These procedures, particularly in a complicated case in which there are multiple plaintiffs and defendants, substantially reduce, if not totally eliminate, any chance of prejudice to the parties that might be caused by jury confusion.

### 1. *Common questions of law or fact*

I will first consider the threshold requirement of whether a common question of law or fact exists in these cases. *See Seguro de Servicio de Salud*, 878 F.2d at 8; *Frazier*, 980 F.2d at 1531; *Doug Brady, Inc.*, 250 F.R.D. at 174; *Yousefi*, 70 F. Supp.2d at 1064-65; *In re Consol. Parlodel Litig.*, 182 F.R.D. at 444; *Fleishman*, 103 F.R.D. at 624. Here, there is a common question of fact, namely whether airborne exposure to butter flavoring products containing diacetyl can cause those exposed to develop lung diseases, including

bronchiolitis obliterans. Plaintiff Stillmunkes was employed at General Mills's microwave popcorn plant in Iowa City, Iowa, at the same time as all of the Blood plaintiffs. In addition, in each case, the manufacturers of the butter flavorings are the same and the plaintiffs were exposed to butter flavoring products from defendants Givaudan, Firmenich and Symrise. Therefore, I conclude that the threshold prerequisite to consolidation of these cases is met here.

### 2. Other factors

#### a. Risk of prejudice to defendants

I must also consider the risk of prejudice to defendants. *See Cantrell*, 999 F.2d at 1011; *Hendrix*, 776 F.2d at 1495; *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *cert. denied*, 460 U.S. 1102 (1983); *see also HBE Corp.*, 135 F.3d at 551 ("Consolidation is inappropriate, however, if it leads to . . .unfair prejudice to a party."); *Seguro de Servicio de Salud*, 878 F.2d at 8 ("A motion for consolidation will usually be granted unless the party opposing it can show 'demonstrable prejudice.'"). Defendants assert that they would be unfairly prejudiced in a consolidated case because the jury would be confused by the following factors: the differing time periods of employment for the plaintiffs; the severity of the injuries differ; and, the causes of action differ. In addition, defendants assert that they will be prejudiced because they have prepared for a unitary trial in *Stillmunkes*. I will address defendants' arguments *seriatim*.

Defendants point out that plaintiff Stillmunkes was allegedly exposed to butter flavoring products during the limited period of 1997 to 2000, while the Blood plaintiffs' claims envelop the period of 1993 through 2005. Defendants contend that because the cases will focus on different time periods, over which notice of the potential risks of diacetyl changed, consolidation is likely to confuse the jury. The court does not share this view. First, the danger of any such jury confusion in a consolidated case will be largely

eliminated by the court's practice of providing the jury a complete set of jury instructions prior to their hearing any evidence. My unique verdict form organized in a chart format, which the jury will have throughout the trial, will guide the jury step by step through all of the issues it must consider and resolve. As a result, the jury will already be apprised of the significance of the time periods at issue, substantially reducing the chances of jury confusion. Also, additional steps can be taken to aid the jury to segregate the issues before it and distinguish between the plaintiffs, further lessening, if not altogether eliminating, the danger of jury confusion here. During opening statements and closing arguments, counsel may use charts or Powerpoint presentations to help the jury distinguish between the plaintiffs' exposure histories, together with timelines to help the jury differentiate between relevant periods in the state of the art. Thus, I conclude that defendants have not established that they will be prejudiced from consolidation due to the differing time periods of the plaintiffs' employment at General Mills.

Defendants also argue that jury confusion and resulting prejudice are likely to occur if these cases are consolidated because plaintiff Stillmunkes's medical condition is different in type or severity than the Blood plaintiffs. Defendants contend that Stillmunkes's pulmonary condition is more severe than any of the Blood plaintiffs. From this, defendants contend that the jury is likely to infer that the condition of each of the Blood plaintiffs will follow the same path as Stillmunkes's condition and that the Blood plaintiffs will each eventually suffer from similar circumstances and limitations. The cases defendants cite on this point, however, are factually distinguishable from the cases here. For instance, in *Cantrell,* 999 F.2d at 1011, the Sixth Circuit Court of Appeals affirmed the consolidation of two asbestos products liability actions filed by two former employees of the same facility against the same defendant. *Id.* at 1010. On appeal, the defendants argued that the trial court erred in consolidating the trials because the plaintiffs suffered

11

from different diseases. One of the plaintiffs was a cancer survivor, the other claimed that he was likely to contract the same type of cancer in the future. *Id.* at 1011. The court of appeals observed that the "potential for prejudice resulting from the consolidation of a cancer case with a non-cancer case is obvious." *Id.* The Sixth Circuit Court of Appeals, however, found that whatever prejudice existed was mitigated by the fact that the risk of cancer testimony was admissible anyway to show plaintiff's fear of contracting cancer. *Id.* Here, plaintiff Stillmunkes and two of the Blood plaintiffs, Jeffrey Brockmeyer and Sue Kohl, all allegedly suffer from the same condition, bronchiolitis obliterans.[5] Since plaintiffs in both cases suffer from bronchiolitis obliterans, consolidation will be more efficient, limiting the need to rehash that disease's etiology and pathology. In addition, defendants' argument on this point presumes that the jury will not follow this court's instructions to give each plaintiff's claim independent consideration. However, this nation's theory of trial by jury is dependant upon the ability of jurors to follow instructions. *See Opper v. United States*, 348 U.S. 84, 95 (1954) ("To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict."). I presume that "jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 326 n.9 (1985). Consequently, I presume juries are composed of prudent, thoughtful, and intelligent individuals, and I will not act based on mere speculation that jurors in this case might disregard my instructions or their oaths. I, therefore, conclude that defendants have

---

[5] Two other Blood plaintiffs, Christopher Blood and Dean Dauber, do not claim to have bronchiolitis obliterans, but are alleged to suffer from upper airway obstructions.

not demonstrated that they will be unduly prejudiced by consolidation because plaintiff Stillmunkes's condition is different in type or severity than that of the Blood plaintiffs.

Defendants also contend that jury confusion and resulting prejudice are likely to occur because different causes of action are asserted. For example, defendants point out that there are fraudulent concealment claims against some of the defendants in the *Blood* case and no such claims in the *Stillmunkes* case.[6] Defendants also note a strict liability failure-to-warn claim is asserted in the *Stillmunkes* case while a common-law negligence failure-to-warn claim is asserted in the *Blood* case. To the extent there are actual differences in the claims being brought in these cases, symmetry of claims is not a prerequisite for consolidation. More importantly, defendants' argument totally ignores the fact that, since each juror will already have been given a full set of jury instructions at the commencement of the case, the jury will already be fully informed of the precise claims before it and provided the means, through the verdict form in chart format, to keep the keep the claims straight. As a result, the jury's likelihood of being confused due to different causes of action being asserted is virtually nonexistent. *See Johnson*, 899 F.2d at 1285 (noting that "the risks of prejudice and confusion may be reduced by the use of cautionary instructions to the jury and verdict sheets outlining the claims of each plaintiff.").

I also note the flaws in the factual underpinnings of defendants' above contention. Defendants point to the fact that plaintiff Stillmunkes has asserted a strict liability failure-

---

[6]Defendants also point out that the *Stillmunkes* case does not currently involve punitive damages while such a claim exists in the *Blood* case. I note, however, that plaintiff Stillmunkes currently has pending her Motion for Reconsideration of the Court's December 10, 2008, Denial of Plaintiff's Motion For Leave to Request Punitive Damages Against Givaudan.

to-warn claim while the Blood plaintiffs have alleged a common-law negligence failure-to-warn claim. Under Iowa law, however, these claims are indistinguishable. In *Wright v. Brooke Group, Ltd.*, 652 N.W.2d 166 (Iowa 2002), the Iowa Supreme Court reiterated that it has discarded the theory of strict liability in failure-to-warn cases and has held that such claims should be submitted under a theory of negligence only, and the appropriate basis for such a claim is the Restatement (Third) of Torts, Products Liability, §§ 1, 2(c). *Id.* at 166. As a result, the failure to warn claims in both cases are identical. Accordingly, I conclude that defendants have not proven that they will be unfairly prejudiced, or that the jury will be confused, if these cases are consolidated because different causes of action are asserted in the *Stillmunkes* and *Blood* cases.

Finally, defendants assert that they have already expended significant time and money preparing for a unitary trial in the *Stillmunkes* case and these efforts will be lost if the cases are consolidated. This argument entirely ignores the enormous savings in time and resources that will result from having one consolidated trial instead of two separate trials. For example, consolidation will offer significant savings in time and expense by eliminating the need to replicate the testimony of the over fifty witnesses common to both cases. Having previously heard the testimony of some of these same witnesses in the recent *Kuiper* trial, I conservatively estimate that the time of consolidated trial would be 70 percent shorter than two separate trials. This is because many of these witnesses testified via video deposition and/or testified to non-plaintiff specific matters such as company policy, product history, or safety procedures and testing. Such testimony in both cases would be entirely repetitive. Thus, I conclude that the time savings of a consolidated trial alone greatly outweigh defendants' lost efforts.

For the reasons discussed above, I conclude that juror confusion is highly unlikely to occur if these two cases are consolidated. Any potential prejudice to defendants if these

lawsuits are combined is insignificant and vastly outweighed by the risk that the failure to consolidate could lead to inconsistent verdicts. Therefore, I find that this factor weighs decidedly in favor of consolidation.

### b. *The burden on the parties, witnesses, and resources*

I next consider the burden on parties, witnesses and available judicial resources posed by multiple lawsuits. See *Cantrell*, 999 F.2d at 1011; *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85; *Hendrix*, 776 F.2d at 1495. Plaintiffs argue that the burden on the parties will be reduced if the cases are consolidated since there are common questions of law and fact in both cases as well as common evidence and witnesses. Defendants counter that those expert witnesses common to both cases will be required to tailor their testimony to reflect the differences in the two cases, negating much, if not all, the savings in resources that might result from consolidation. I find defendants' argument to be completely disingenuous. Based on my experience in the recent *Kuiper* trial, where much of the witnesses' testimony was not plaintiff specific but was instead offered on such matters as industry practices, product history, or safety procedures and testing, the consolidation of these cases would not require any expanded testimony from most witnesses. As noted above, plaintiffs in these cases were all employed in the same popcorn plant at which time they were exposed to the same butter flavoring products. Because each plaintiff was employed at General Mills's Iowa City popcorn plant, there will be near universal overlap in testimony with respect to such matters as that plant's industrial hygiene practices, ventilation, personal protection equipment and ingredient handling. There will also be overlap in witnesses concerning the plaintiffs' work history at General Mills's popcorn plant. Indeed, the same ten witnesses from General Mills who will testify about Stillmunkes's work history will also testify concerning the Blood plaintiffs' employment with that company. While some of their testimony regarding plaintiffs' work

15

history will undoubtedly be plaintiff specific, the need to call these ten witnesses twice in separate trials is eliminated by consolidation. A similar savings to the parties, witnesses and judicial resources will be garnered in a consolidated trial with respect to the thirty-seven employees and consultants of defendants that plaintiffs' counsel intends to designate as witnesses in both cases. Thus, it is clear that given the near identical circumstances of these two cases, the savings to the parties, witnesses, and judicial resources that will result from consolidation will be enormous. Accordingly, I conclude that this factor weighs heavily in favor of consolidation.

### c. *Length of trial*

I must also consider the length of time required to conclude multiple suits as against a single one. The parties have not offered estimates in the time required for trial of both the *Blood* and *Stillmunkes* cases separately as against a single, consolidated trial. Nonetheless, I conclude that the time savings in a consolidated case would be tremendous. Clearly, a substantial savings in trial time will result from not having to repeat the testimony of the fifty plus witnesses common to both cases. As I noted above, based on my experience in the *Kuiper* trial, the time of consolidated trial would be 70 percent shorter than two separate trials. Accordingly, I conclude that this factor also weighs heavily in favor of consolidation.

## III. CONCLUSION

For the reasons discussed above, upon balancing the risks of prejudice and possible confusion against the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses and judicial resources, as well as the length of time required for trial of each of the two lawsuits as opposed to one, I conclude that consolidation of these two cases for trial is appropriate. This is not a close question. In

fact, it is the polar opposite of the joint motion to consolidate I denied last year in the *Kuiper* and *Stillmunkes* cases. *Kuiper v. Givaudan Flavors Corp.*, No. 06-4009-MWB (Sept. 17, 2008 N.D. Iowa). There, I found a jury would likely be confused having to assimilate and analyze complicated testimony concerning two similar but yet quite diverse factual circumstances. Substantial differences existed between the *Stillmunkes* and *Kuiper* cases. The plaintiffs were employed in different popcorn plants, had no overlap in exposure periods, and the type and manufacturers of the butter flavorings were different. None of these differences exist in the *Blood* and *Stillmunkes* cases. Therefore, I order that the *Blood* and *Stillmunkes* cases are consolidated for trial on the current trial date for the *Blood* case of July 20, 2009. The Clerk of Court is directed to reassign the *Stillmunkes* case to the undersigned's docket.

**IT IS SO ORDERED.**

**DATED** this 10th day of April, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA